# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

BEVERLY JACKSON, personally, and in her
official capacity as CEO of the American
Ñedicine Licensing Board,

               Plaintiff,

  v.

STATE OF CONNECTICUT
DEPARTMENT OF PUBLIC HEALTH,
Jewel Mullen, in her official capacity as
Commissioner of the State of Connecticut
Department of Public Health; Adrienne
Anderson, in her official capacity as
Investigations Supervisor of the State of
Connecticut Department of Public Health and
as an individual,

               Defendants.

3:15 - CV - 750 (CSH)

APRIL 15, 2016

## RULING ON PLAINTIFF'S MOTIONS FOR CONTEMPT, SANCTIONS FOR VIOLATION OF RULE 11, AND DEFAULT JUDGMENT (DOC. 21)

**HAIGHT, Senior District Judge:**

## I. INTRODUCTION

*Pro se* plaintiff Beverly Jackson commenced this action for declaratory judgment "for the purpose of determining a question of actual controversy between the parties of whether . . . under the Supremacy Clause of the United States Constitution a federal trademark preempts an inconsistent state statute or regulation." Doc. 1, at 3-4. She brings the action against the Connecticut State Department of Public Health and two of its officials, Jewel Mullen and Adrienne Anderson, claiming that a Connecticut state statute "precludes [Jackson] from practicing her profession in

1

violation of rights secured by the federal constitution."[1]  *Id.*, at 6.   The statute in question is Conn. Gen. Stat. § 20-9(a), which provides:  "[n]o person shall, for compensation, gain or reward, received or expected, diagnose, treat, operate for or prescribe for any injury, deformity, ailment or disease, actual or imaginary, of another person, nor practice surgery, until he has obtained such a license as provided in section 20-10, and then only in the kind or branch of practice stated in such license."  Plaintiff specifically points to the related penalty provisions of Conn. Gen. Stat. § 20-14, which provide that "any person who violates any provision of section 20-9 shall be guilty of a class D felony."   Conviction of a class D felony may result in a term of imprisonment "not more than five years," Conn. Gen. Stat. § 531-35a(8), or a fine in "an amount not to exceed five thousand dollars," Conn. Gen. Stat. § 53a-41.  *See* Doc. 1, at 5-6 (alleging that "[t]he threat of prosecution is real and immediate" and may make Plaintiff "subject to criminal sanctions").

Jackson, who identifies herself as an "N.D.,"a "Doctor of "Ňedicine," is the licensor of the "American Ňedicine Licensing Board, Inc.," a federal licensing agency organized and existing under the laws of the United States through its trademark (Reg. No. 3,765,779).[2] Doc. 1, at 2.  She obtained this trademark to verify her intent to "validate licensure for the Doctor of Ňedicine® to provide 'alternative medical services related to the practice of functional diagnostics and natural

---

[1]  For example, Plaintiff alleges that "Defendant Adrienne Anderson, acting under color of law, threatened to take action against Plaintiff for practicing medicine" and "displayed a complete disregard for the registered trademark Doctor of Ňedicine." Doc. 1, at 6.

[2]  According to Plaintiff, this trademark was registered on March 30, 2010, and amended on June 25, 2013.  Doc. 1, at 2.   "The trademark Doctor of Ňedicine® identified under TESS at U.S. Serial Number 76699108 lists the certification statement for this particular trademark as follows: 'The certification mark as used by authorized persons is intended to certify that an individual has met the requirements of the American Nedicine Licensing Board, Inc., and is licensed to provide services as a Doctor of Ňedicine.®'"  *Id.*

medicine.'" *Id.*   In seeking a declaratory judgment, Plaintiff requests that this Court "declare the unconstitutionality of the state statute," and provide "injunctive relief to enjoin the Defendants from enforcing the unconstitutional state statute pursuant to 42 U.S.C. § 1983." *Id.*, at 4.   Plaintiff claims that the threat of prosecution in Connecticut has caused her "undue stress and anxiety because a statute declares conduct [such as the practice of Ňedicine] to be subject to criminal sanctions" and "government prosecutors are acting to enforce those laws." *Id.*, at 7.   Although she has allegedly "spearheaded this new branch of medicine for the past 10 years," Connecticut has "robbed Plaintiff of her resolve to practice as a Doctor of Ňedicine® due to the threat of prosecution." *Id.*, at 8.

Pending before the Court are three motions by Plaintiff, all contained within one filing.   They include a motion for contempt, a motion for sanctions, and a motion for default judgment as to all Defendants.   *See* Doc. 21.   The Court resolves these motions herein.

## II.  DISCUSSION

### A.   Motion for Contempt

#### 1.   Standard

"[I]t is firmly established that '[t]he power to punish for contempts is inherent in all courts.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (quoting *Ex parte Robinson*, 19 Wall. 505, 510 (1873)).   Thus, an individual who fails to obey a valid order of the court may be subjected to both civil and criminal penalties for his actions.   *United States v. Petito*, 671 F.2d 68, 72 (2d Cir. 1982), *cert. denied*, 459 U.S. 824 (1982).

An order of civil contempt may be issued pursuant to 18 U.S.C. § 401, which provides that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its

discretion, such contempt of its authority," including, *inter alia*, "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."  The exercise of this contempt power "serves to 'protect the due and orderly administration of justice and to maintain the authority and dignity of the court.'" *CBS Broadcasting. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (internal brackets omitted)(quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

Nonetheless, "the district court's power to hold a party in contempt – whether civil or criminal – is significantly circumscribed." *United States v. Local 1804-1, Int'l Longshoremen's Ass'n, AFL-CIO*, 44 F.3d 1091, 1096 (2d Cir. 1995).   A contempt order is recognized as a "potent weapon . . . to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct."  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.1995)(citations and internal quotation marks omitted). As the Second Circuit has repeatedly articulated, a court may hold a party in contempt if "(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broadcasting, Inc.*, 814 F.3d at 98 (quoting *Paramedics Electromedicina Commercial, Ltda. v. GE Med. Sys. Info. Techs. Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)).  *See also  Perez v. Danbury Hosp.*, 347 F.3d 419, 423–24 (2d Cir. 2003) (same); *United States v. Local 1804-1, Int'l Longshoremen's Ass'n, AFL-CIO*, 44 F.3d 1091, 1096 (2d Cir. 1995) (same).

 The imposition of civil contempt sanctions is designed to serve "dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina Commercial, Ltda.,* 369 F.3d at 657.  The decision to hold a party in contempt is within the discretion of the district court. *Dunn v. New York State Dept. of Labor*, 47

4

F.3d 485, 490 (2d Cir.1995).

    **2.**      <u>**Arguments and Analysis**</u>

In the case at bar, Plaintiff argues that Defendants "hold no regard or respect for the Court Rules of Court," have "intentionally and willfully violated the Federal Code of Civil Procedure," including Rules 6 and 11, and have violated "Local Rule 7(b)(1)(a) of Civil Procedure by not conferring with plaintiff." Doc. 21, at 3. In support, Plaintiff alleges that Defendants have "refused to serve [her] with any documents in this matter." *Id.*, at 1. She also alleges that "[d]efense counsel [has] us[ed] his position in the Office of the Attorney General to communicate directly with the Court *ex parte*, in an attempt to intimidate Plaintiff and prevent [ ] [her] from participating in this case." *Id.*

In response to these allegations, Defendants object, stating that Plaintiff's motion is "not filed in good faith and should be denied." Doc. 22, at 1. They assert that Plaintiff has previously made these same arguments regarding lack of service in her Second Motion for Default "due to lack of or insufficient services of process" [Doc. 16]. Doc. 22, at 1. Defendants point out that they objected to that second motion for default, indicating that "due to an administrative error," no hard copies had been mailed to Plaintiff of Defendants' Doc. 10 & 11 (appearances of counsel) and Doc. 12 (Motion for Extension of Time). Doc. 22, at 1. However, on June 25, 2015, Defendants mailed those documents to Plaintiff so that the Court denied Plaintiff's second motion for default, indicating that it "accept[ed] Defendants' counsel's representation that failure of service upon Plaintiff was 'administrative error.'" Doc. 18. Since that time, Defendants have mailed all pleadings in hard

copy to Plaintiff's address of record when they have made electronic filings with the Court.[3]  Doc. 22, at 2.

In addition, Defendants' counsel aver that they and Assistant Attorney General Walter Menjivar met with Plaintiff (at her request) "to discuss the 26f Report on Monday, July 6, 2015," and "[a]t no time during the meeting did plaintiff indicate she was not receiving any of the pleadings." *Id.*  Accordingly, Defendants request that Plaintiff's motion for contempt be denied.

As set forth *supra*, a district court's power to hold a party in contempt is carefully circumscribed.  In the case at bar, there are no valid grounds for a finding of contempt.  In its Order of June 29, 2015, the Court relied on Defendants' counsel's representation that "the problem of service has now been cured in that the Defendants' pleadings have all been mailed to Plaintiff on June 25, 2015 and all future written documents will be sent to Plaintiff by regular United States mail."  Doc. 18 (internal quotation marks and brackets omitted).  Thereafter, as indicated by Defendants, all pleadings filed electronically by Defendants included certifications that "a copy of the foregoing [pleading] was mailed to plaintiff at 19 Silk Street, Norwalk, CT 06850."[4]  *See*, e.g, Doc. 19, at 3; Doc. 22, at 4; Doc. 26, at 3.

---

[3]  For example, the court record reflects that Defendants' Doc. 17 & 19 (filed 6/26/2015 and 7/1/2015, respectively) both include certifications that Defendants mailed the pleadings to Plaintiff at "19 Silk Street, Norwalk, CT 06850."  By placing those documents in the mail addressed to Plaintiff's address of record, service was effectively made to Plaintiff.  Fed. R. Civ. P. 4(b)(2)(C). The Court finds no sufficient evidentiary basis to discount Defendants' counsel's certifications, which are encompassed by counsel's duty to make factual contentions with "evidentiary support" in pleadings they present to the Court.  Fed. R. Civ. P. 11(b)(3).

[4]  Under Rule 4(b)(2)(c), Fed. R. Civ. P.,  a pleading is deemed "served under this rule by: . . . (C) mailing it to the person's last known address – in which event service is complete upon mailing."  Plaintiff is advised to update her address of record if that is not the proper address for service and/or if mail is not deliverable at that address.

Furthermore, the parties' most recent, amended Rule 26(f) Report [Doc. 37] indicated that "Beverly Jackson, pro se, for plaintiff" participated in the Rule 26(f) conference which resulted in the report. Doc. 37, at 3.  There is thus no reason for the Court to find that Defendants excluded Plaintiff from participating in the litigation of this case.

Finally, Defendants have not engaged in *ex parte* communications with the Court.  To the extent that Defendants initially inadvertently failed to mail hard copies of their pleadings to Plaintiff, the Court may have seen the pleadings before Plaintiff due to administrative error.  At no point did Defendants intentionally communicate *ex parte* with the Court in an attempt to exclude Plaintiff.

In sum, the Court finds no evidence that Defendants failed to comply with a "clear and unambiguous" order, that any alleged "noncompliance [was] clear and convincing," or that Defendants have not "diligently attempted to comply [with Court orders] in a reasonable manner." *See CBS Broadcasting, Inc.*, 814 F.3d at 98.  In short, there is no valid basis to hold Defendants in contempt.

**B.**   **Motion for Sanctions**

**1.**   **Standard**

"[D]istrict courts generally have wide discretion in deciding when sanctions are appropriate." *Morley v. Ciba Geigy Corp.*, 66 F.3d 21, 24 (2d Cir. 1995) (quoting *Sanko Steamship Co., Ltd. v. Galin*, 835 F.2d 51, 53 (2d Cir.1987)).  In general, "[c]ourts may issue Rule 11 [s]anctions only in extraordinary circumstances." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178 (S.D.N.Y. 2008). *See also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316, 2006 WL 2807213, at *6 (S.D.N.Y. Sept. 28, 2006) ("Sanctions should always be a (very) last resort.") (citation

omitted).

Under Rule 11(b), Fed. R. Civ. P., "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Rule 11(c)(1)  then provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."

## 2.    **Arguments and Analysis**

Plaintiff asserts that "by not serving [her] with the documents [they filed]," Defendants have acted in an "intimidating, harassing, delaying" manner which has increased her costs of litigation. Doc. 21, at 2.  She argues that Defendants have thus violated the portion of Rule 11 which prohibits a party from presenting a pleading to the court with "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," Fed. R. Civ. P. 11 (b)(1)).  *Id.*  In particular, she "focus[es] on the mandatory language in Rule 11" to find that a "court must impose a sanction if it finds that the rule has been violated."  Doc. 21, at 3 (citing *Aetna Life Ins. Co. v. Alla Med. Servs.*, 855 F.2d 1470, 1476 (9th Cir. 1988)).

Defendants have objected to the motion for sanctions. Doc. 22, at 1.  As set forth *supra*, they counter with the assertion that they have cured their "administrative error" in which they failed to send Plaintiff hard copies of their pleadings in addition to filing the documents electronically for the

Court.  *Id.*  To effect that cure, Defendants not only mailed the documents that Plaintiff was missing, they mailed all pleadings thereafter to her address of record.  *Id.*, at 1-2.

The Court finds that there is no evidence to demonstrate that Defendants filed any pleadings in an effort "to harass, cause unnecessary delay, or needlessly increase the cost of litigation,"  Fed. R. Civ. P. 11(b)(1).  No facts suggest Defendants acted in bad faith.  Granted, Defendants at first erroneously failed to fulfill their obligations for service of paper copies of their pleadings on Plaintiff due to administrative error.  However, when that error came to light, Defendants' counsel informed the Court that they quickly remedied the situation by mailing those pleadings and have henceforth complied with service by mailing.  Such behavior fails to indicate the willful misconduct implicated by Rule 11.  In sum, this case is not one where the imposition of sanctions would be appropriate.

## C.   **Motion for Default Judgment**

### 1.   **Standard**

Pursuant to Rule 55, Fed. R. Civ. P., the process for obtaining a default judgment in a federal civil action involves two distinct steps.   First, pursuant to Federal Rule 55(a) of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Next, if default is properly entered, the Plaintiff must seek a default judgment under Rule 55(b), Fed. R. Civ. P.[5]

---

[5]  As the Second Circuit summarized in *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005):

The first step is to obtain a default. When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention, and Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended. Having obtained a default, a

Furthermore, even when a default has been entered by the clerk, "[i]t is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of S. Conn. Ltd. Partnership v. Smith*, 141 F.Supp.2d 277, 281 (D.Conn. 2001) (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir.1999)).  In general, in civil cases, "where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party." *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir.1984), *cert. denied*, 469 U.S. 874 (1984). However, to insure proper entry of default judgment, it is incumbent on the Court to review whether the allegations of the complaint state a legal claim.  *See, e.g., Evanauskas v. Strumpf,* No.  3:00-CV-1106 (JCH), 2001 WL 777477, at *1  (D.Conn. June 27, 2001) ("before [default] judgment can be entered, the court must determine whether plaintiff's factual allegations are sufficient to state a claim for relief on each of the causes of action for which the plaintiff seeks judgment by default") (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)).

## 2.   <u>Arguments and Analysis</u>

In the case at bar, the first crucial step in the process toward default judgment has not been achieved:  the Clerk has not entered default against the Defendants pursuant to Rule 55(a), Fed. R. Civ. P.  Therefore, procedurally, Plaintiff may not seek entry of default *judgment*, step two, against

---

plaintiff must next seek a judgment by default under Rule 55(b). Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not an infant or incompetent person. *See* Fed. R. Civ. P. 55(b)(1).  'In all other cases,' Rule 55(b)(2) governs, and it requires a party seeking a judgment by default to apply to the court for entry of a default judgment.

the Defendants, Fed. R. Civ. P. 55 (b).

Furthermore, substantively, the facts of the case clearly prevent step one, the Clerk's entry of default against the Defendants. Counsel for Defendants have appeared in this action [Doc. 10, 11] and Defendants have responded to Plaintiff's pleadings, including filing a "Motion to Dismiss" [Doc. 28] in response to her Complaint.   Defendants have not, therefore, "failed to plead or otherwise defend,"  so that no failure can be "shown by affidavit or otherwise," Fed. R. Civ. P. 55(a).

Despite Defendants' appearances and filings in this action, Plaintiff has moved three times for default against Defendants.  The first two motions sought entry of default [Doc. 14, 16]; and the Court denied them because the deadline for Defendants to answer or respond had not elapsed.  *See* Doc. 15 & 18.  In her pending motion,  Plaintiff moves against all Defendants for default *judgment* [Doc. 21].  As set forth *supra*,  there must be a proper entry of default under Rule 55(a)  before a party may seek default *judgment* under Rule 55(b) against the defaulting party.  There is no present default against Defendants, nor the basis to enter one.  Defendants have not failed to respond or plead or defend in this action.  Absent a valid entry of default against Defendants, there can be no default judgment by the Court.  Where there are no grounds for entry of default, much less default judgment, the Court will deny the motion for default.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motions for contempt, for sanctions, and for default judgment as to all Defendants [Doc. 21] are DENIED.  Because Defendants have filed a Motion to Dismiss this action in its entirety [Doc. 28], the Court hereby stays the case deadlines until that

motion is decided.[6]  If any claims remain following the Court's ruling on that motion, the Court will

set the remaining cases deadlines at that time.

      It is SO ORDERED.

      Dated: New Haven, Connecticut
           April 15, 2016

                                          */s/Charles S. Haight, Jr.*     
                                          CHARLES S. HAIGHT, JR.
                                          Senior United States District Judge

---

[6]  The Court notes that Oral Argument was requested on that motion.  The parties will be notified if the Court determines that oral argument will assist the Court in ruling.  Otherwise, the motion will be decided on the briefs filed.